IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NORTHMOBILETECH LLC,

                          Plaintiff,                          OPINION AND ORDER

    v.
                                                              11-cv-287-wmc

SIMON PROPERTY GROUP, INC.,

and

SIMON PROPERTY GROUP, LLP,

                          Defendants.

---

In this patent infringement lawsuit, plaintiff NorthMobileTech LLC alleges that Simon Property Group, Inc. and Simon Property Group, LLP ("Simon") infringe upon plaintiff's United States Patent No. 7,805,130 (the '130 patent), entitled "Marketing Method." Both plaintiff and defendants have filed motions requesting claims construction. (*See* dkts. ##37 & 40.) Three terms are disputed, and the court construes all three below, not because they require a departure from their plan meaning, but to deter either party from arguing for an interpretation that departs from that meaning.

Defendants have also filed a motion for sanctions, asserting that plaintiff has brought a frivolous claim. (Dkt. #30.) The court finds that plaintiff has at least a colorable infringement claim, and will deny that motion.

## I. Claims

The terms that require construction are:

- "determining that said mobile wireless communications device is located at a given shopping facility"

- "a wireless call or message"

- "text-based marketing messages"

## II.  Claims Construction Standards

Claim construction is intended to give proper scope and meaning to claim language that the jury might otherwise misunderstand.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  But a district court need not "repeat or restate every claim term."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  If a claim term is in plain English and derives no special meaning from the patent or its prosecution history, the plain and ordinary meaning speaks for itself.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.");  *Riddell, Inc. v. Schutt Sports, Inc.*, No. 08-cv-711-bbc, 2009 U.S. Dist. LEXIS 58961 at *5-6 (W.D. Wis. 2009) ("[When a claim term is] clear and nothing in the claim language or the specification necessitates a special meaning, the plain and ordinary meaning controls.").

### A.  Intrinsic Evidence

When construing claims, courts must look first to the intrinsic evidence: the claims, patent specification, and the prosecution history.  *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).  Examination of the claim language is the starting point:  "claim construction must adhere carefully to the precise language of the

claims that the patent [examiner] has allowed." *Ardisam, Inc. v. Ameristep, Inc.*, 336 F. Supp. 2d 867, 879 (W.D. Wis. 2004) (citing *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 396 (Ct. Fed. Cl. 1967)).  With the exception of terms explicitly defined by the applicant, the language is to be construed as it would be understood by one of ordinary skill in the relevant art, in the context of the surrounding language and of the patent as a whole.  *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).

The claims language is then considered in light of the specification to determine whether the inventor expressed a different meaning for the language, whether the preferred embodiment is consistent with the initial interpretation and whether the inventor specifically disclaimed certain subject matter.  *Rexnord*, 274 F.3d at 1342-43. While the specification contains a written description of the invention that is meant to help explain the invention and possibly define claim terms, *Markman*, 52 F.3d at 979, "limitations from the specification are not to be read into the claims" as a general rule. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004).

Finally, the interpretation may be examined for consistency with the patent's prosecution history and any clear disclaimers that may have been made to the United States PTO.  *Rexnord*, 274 F.3d at 1343.

### B.  Extrinsic Evidence

When the intrinsic evidence before a court is insufficient to allow a clear construction, the court may consult extrinsic evidence, such as dictionaries, treatises and expert testimony for background information and to "shed useful light on relevant art."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (internal citations omitted). In general, however, this type of evidence is less reliable than intrinsic evidence in determining the meaning of claim terms and is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19.

### III. The '130 Patent

- **"determining that said mobile wireless communications device is located at a given shopping facility"**

Plaintiff NorthMobileTech contends that the phrase "determining that said mobile wireless communications device is located at a given shopping facility" should be construed to mean "coming to a decision that the wireless communication device is associated with a given shopping facility." (Pl.'s Br. (dkt. #41) at 2.) Defendants believe that the phrase needs no special construction and that the language should be given its plain and ordinary meaning. (Def.'s Br. (dkt. #38) at 6.) Although plaintiff's proposed construction diverges from the claim language at multiple points, the parties' dispute boils down to one issue: whether the wireless device must be determined to be physically at (that is, inside or in the general vicinity of) the shopping mall, or whether it can simply be identified as associated with (or inquiring about) the mall.

The court begins with the claim language. The disputed language is found in the two independent claims of the patent: claims 1 and 19. On its face, the language (particularly the word "at") unambiguously indicates that there must be a determination

that the wireless communication device is *physically present within, or close to,* the shopping facility.[1]  There is some latent uncertainty as to the scope of "at" -- one might reasonably argue about whether the phrase includes a person on a road about to turn into the parking lot of a given mall -- but it plainly does not refer to a device located any appreciable distance from the mall.

Plaintiff argues that this plain meaning interpretation is inaccurate in the context of the entire patent; that the phrase "at" actually means "associated with."  (Pl.'s Opp. Br. (dkt. #46) at 15-16 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.").)  Plaintiff first argues that the claims anticipate that a shopper may not be near the mall, because dependent claim 13 describes a system that will determine that a shopper is "at the mall" simply because she dials a specific telephone number.  Thus, plaintiff argues, the patented system really determines if a user is *associated* with a mall, instead of actually located there.  Plaintiff also argues that this is consistent with the general "purpose of the invention, which is to entice users to enter a store." (Pl.'s Opp. Br. (dkt. #46) at 18.)

There are two ways to interpret the purpose of dependent claim 13.   In defendants' interpretation, the patentees intended shoppers to notice in-mall advertisements directing them to call a designated phone number for real-time coupons and updates specific to that mall; use of the number by shoppers away from the mall

---

[1]  Both sides agree that "at" does not need to mean "inside," and can include the general vicinity of the mall, such as in the parking lot.  (Pl.'s Opp. Br. (dkt. #44) at 7; Df.'s Opp. Br. (dkt. #46) at 16.)

would be possible, but an unintended side-effect.  In plaintiff's interpretation, the patentees intended that users would access real-time mall-specific advertisements by calling the designated number from any location in the world, despite the fact that many of these advertisements would be expired by the time they arrived at the mall.  Plaintiff's interpretation also requires the court to accept that instead of clearly expressing this intention in claims 1 and 19, the patentee left it to be implied by the terms of dependent claim 13, and chose words in the independent patent claims which, read alone, mean the opposite.  Of these two choices, defendants' interpretation is far more plausible, and does not require the court to ignore the plain meaning of the word "at."

Plaintiff seeks to shore up its alternative interpretation by pointing to dependent claims 3, 4 and 5, which describe a method of using information imbedded in the shopper's call data (either GPS coordinates or the location of the nearest cell tower) to discern the shopper's location.  Plaintiff argues that because these dependent claims purport to identify the shopper by her *actual* geographic location, the overlying independent claim 1 must be indifferent to the shopper's actual location -- otherwise claims 3, 4 and 5 would be superfluous.  For this logic to hold, claims 3, 4 and 5 must purport to introduce the new element of identifying the shopper by her actual geographic location.  Unfortunately for plaintiff, dependent claims 3, 4 and 5 present two possible *technologies* for identifying the shopper's geographic location, making them mere subsets of the general idea, already presented in claim 1, that the shopper's actual location "at" the mall is to be determined.

In sum, none of the claims in this patent would be rendered superfluous or illogical by assigning the plain meaning to the word "at."  "Claim construction 'begins and ends in all cases with the actual words of the claim.'"  *Becton, Dickinson & Co. v. Tyco Healthcare Grp, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010)(quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)).  The court can find no ambiguity in the actual words of the patent here which would justify looking elsewhere for guidance as to their meaning.

Moreover, defendants' interpretation comports with the specification and prosecution history.  Turning first to the specification, the court's assignment of the plain meaning interpretation of "at" is confirmed.  Before describing specific embodiments, the patentees explained the general point of their invention:

> The value to the shopper is tremendous: it is a sales aid reminding them of specific sales programs now underway, alerting them to promotions that may not be advertised outside the mall, it conveys time sensitive information, such as "Happy Hour" Specials in restaurants and bars.
>
> The value to the retailer is even greater as the merchant now has the ability to more actively, in real time, drive extremely qualified traffic to their store.  The shopper is in the mall; at that moment and wants to see what you have to offer (this is a permission based solution, so they have asked to receive your information).

(130 pat., col. 2, lns. 53-61).

Rather than attempt to explain the above-quoted language, which strongly supports a literal interpretation of "at," plaintiff argues that such an interpretation conflicts with two of the described embodiments.  In one of the cited embodiments, the system will identify a shopper as "at the mall" merely by the fact that she calls a phone

number.  But this merely reiterates plaintiff's argument with respect to the language of claim 13, which the court has already considered and rejected.  Instead of referring to claim 13, plaintiff points to the embodiment of claim 13, in which "a user notes a call-in wireless access number associated with the facility." (130 pat., col. 2, lns. 2-3.)

In the other cited embodiment, a user is identified by the location of the nearest cell tower.  If the range of the cell tower greatly exceeds the size of the mall, this method will identify callers as "at the mall" even though he may in fact be some distance away.  As with the claim 13 example, a very reasonable explanation for the fact that the system may turn up false positives using cell tower identifiers is that this technology is not perfect and has unintended consequences.

Turning, finally, to the prosecution history, a plain language reading is again supported.  During the patent prosecution, the patentees were required to distinguish the "Inselberg" prior art, which described a system that allowed consumers to buy objects and obtain coupons while seated at live entertainment events using their wireless phones.  The patentees succeeded in distinguishing Inselberg by claiming that:

> This difference is crucial: unlike Inselberg, with the method of claim 1, the marketing incentive particular to a store in the shopping facility returned in response to the user's menu choice acts as an enticement to induce the user to enter the store.  So "the merchant now has the ability to more actively, in real time, drive extremely qualified traffic to their store.  The shopper is in the mall; at that moment, and wants to see what you have to offer."
>
> . . .
>
> Therefore, the method of claim 1 has the result of drawing shoppers in a mall into a store in which they are interested.

> This is in contrast to Inselberg which has the result of enticing a user to order further goods while at his or her seat.

(Response to Office Action (dkt. #30-7) at 6 (emphasis in original) (quoting the patent at 130 pat., col. 2, lns. 53-61).)

Plaintiff argues that this language is entitled to little weight because it was made at a stage in the patent prosecution when there was not any "determining" limitation in the patent claims. (That is, instead of "determining that said mobile wireless communications device is located at a given shopping facility," the claims in the patent read "receiving a wireless call or message originating at a given shopping facility." (Pl.'s Br., Ex. 2 (dkt. #41) at 49.)) Plaintiff's point is that the language used to distinguish Inselberg could not have been intended to distinguish the phrase the court is now construing (the "determining" limitation), which was not then in the patent.

But this does not render the distinguishing language meaningless. The court looks to the prosecution history in part for context about the purpose of the patent. Plaintiffs do not suggest that the invention claimed by the patent changed after Inselberg was distinguished. On the contrary, they admit that the subsequent change in claim language was made simply to "more clearly relate the location-based nature of the service" and to clarify "who is doing the receiving and who is doing the returning." ('130 Patent Application History (dkt. #41-2) at 81-85.)

Plaintiff also stresses that the addition of the "determining" limitation during the patent's prosecution -- "determining that said mobile wireless communications device is located" -- is highly significant. According to plaintiff, this addition enabled the patent claims to cover the third embodiment listed in the specification: the one in which the

9

system identifies users as "at the mall" because they dial a specific phone number.  This argument is but *another* appearance of the same argument first made with respect to claim 13.  Once again, the court finds that claim 13 (or the "third embodiment," depending on whether one is looking at the claim language or the specification) is in harmony with a plain meaning reading of the contested phrase.[2]

- **a wireless call or message**

The term "a wireless call or message" is used in independent claims 1 and 19.  Plaintiff asserts that the term needs no interpretation, (Pl.'s Br. (dkt. #41) at 2), but that if an interpretation is given, it should include communications made using the internet, (Pl.'s Opp. Br. (dkt. #46) at 11).  Defendants argue that the phrase should mean "communications made using voice calling or short messaging capabilities."  (Def.'s Br. (dkt. #38) at 8.)

Starting with the claim language, there is nothing that would require that "a wireless call or message" be given anything other than its plain meaning.[3]  The claims are silent about the manner in which any given "call" or "message" must be communicated from the wireless device to the server.  The claims certainly do not require that a

---

[2]   Moreover, plaintiff's contention that adding the determining limitation significantly changed the patent in that it suddenly enabled the patentee to include phone number-based embodiments, is undermined by the fact that the original, pre-"determining" limitation patent already described this invention in claim 15: "wherein said wireless cellular telephone call is made to a destination number terminated at said server and wherein said server terminates a plurality of destination numbers and wherein said facility is identified by said destination number."

[3]   It is true that "call" and "message" may have any number of "plain meanings" according to the technology at issue.  The court's role here is simply to determine if there is anything in the patent or prosecution history that would require a "special meaning."

telephone line or short messaging service, in particular, be used.  "Absent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language."  *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004).

The court turns next to the specification for possible limitations.  A fundamental principle of patent claims construction is that the court should not read limitations from the specification *into* the claim language; the specification can only be used to limit a claim if there has been "a clear disclosure that the patentee intended the claims to be limited."  *MBO Labs, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1334 (Fed. Cir. 2007).  Defendants argue that because the patentees never mentioned the internet, websites, or any related technology in the specification, and because their listed embodiments were comprised solely of telephone network calls and SMS messages, the claim must be limited to these technologies.  This argument directly contradicts the prohibition against reading limitations from the specification into the claim.

This is not a situation in which the patentee used the terms "call" and "message" "throughout the entire patent specification, in a manner consistent with only a single meaning [such that] he has defined that term 'by implication.'"  *Bell Atl. Network Servs. v. Covad Communs. Grp.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001).  In *Bell Atlantic*, the court found that the terms "mode" and "rate" referred to two different and distinct concepts because in both the "Summary of the Invention" and the "Detailed Description of the Preferred Embodiments," the patentee used the terms not merely in different contexts,

11

but in direct opposition (e.g., the specification noted that the arrows used in a diagram "illustrate the reversible *mode* feature of the system and no fixed data *rate* is given").  *Id*.

Here, the specification distinguishes "dial[ing] a number or send[ing] an SMS message" from other types of communications that may be sent by a mobile phone such as cell tower registration information.  (130 pat., col. 4, lns. 18-41.)  But this is a far cry from the sort of "implied definition" found in *Bell Atlantic*.  The patent does not ever equate "call" with "dialing a number on a voice line," nor "message" with "sending an SMS message"; the examples provided in the specification are plainly just that.   In particular, the specification explicitly acknowledges that an SMS message is but one possible embodiment of a "message": "[t]he message may be an oral message, a video message or in some other form, but is preferably a text-based message, *such as* an SMS message."  (130 pat., col. 2, lns. 30-32 (emphasis added).)

The court turns finally to the prosecution history.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002) (holding that claims in a patent are to be interpreted in light of the application process).  Prosecution history estoppel applies to matters surrendered as a result of amendments to overcome patentability rejections and as a result of an argument to secure the allowance of a claim. *Id; see also Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("[P]rosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations.").

There is some evidence suggesting that the terms "call" and "message" should *not*

be given their plain meaning based on prosecution history estoppel.   During the prosecution, the patentees had to overcome a rejection of obviousness based on prior art in "Himmel" in view of another piece of prior art, "Strisower."[4]   Himmel envisioned a marketing system comprising a database of user purchasing preferences and a suite of technology capable of determining a user's location and capable of sending mobile phone texts with advertisements and coupons.   Location-specific advertisements would be "pushed" to a user's phone when he arrived at a particular store or shopping mall.   In contrast, Strisower offered users the ability to select from a menu of advertisements and coupons for particular malls and particular stores on particular dates using computers communicating via the internet.

The '130 patentees argued that it made no sense to combine the ability to search coupons by date, as shown in Strisower, with the real-time messaging service envisioned by Himmel.  They also argued that:

> Strisower "generally pertains to a method and apparatus for enabling advertising on a computer network" . . . . "A user wishing to view advertisements . . . may access the network [] via a computer []."  The "webpage that may be displayed to a user accessing the internet [] may allow the user to select a particular region . . . ."

> . . .

> Claim 1 [of the '130 patent] requires "responsive to said receiving, returning to said wireless device a menu of

---

[4]  The prosecution record is more than a bit convoluted.  Apparently, the patentee and examiner had an undocumented phone conversation in which the patentees convinced the examiner that Himmel, in view of Strisower, did not apply to the '130 patent.  The patentee then laid out the arguments presented during that phone call in an October 20, 2009 "Response to Office Action."   It is from this Response that the court draws its information.  (*See* Declaration of Timothy J. Carroll, Ex. 3 (dkt. #39).)

> choices particular to that shopping facility."  The Examiner
> admits that Himmel does not do this, but looks to Strisower
> for this feature.
>
>         Strisower does show a menu of choices, but not in
> response to receiving a call.

(Declaration of Timothy J. Carroll, Ex. 3 (dkt. #39) at 7-8 (internal citations omitted).)

Defendants argue that this portion of the file wrapper shows the patentees disclaiming any intention of extending the patent to internet-based calls and messages. Plaintiff responds that the patentees could not have been relying on the difference between a "call" and internet use to distinguish Strisower, because a year earlier the patentee did not use the call/internet distinction to overcome the patent examiner's rejection based on the Inselberg patent (which also used the internet).  In any event, the court does not read the patentee's attempts to distinguish Strisower as a clear disavowal of internet communications, or an attempt to distinguish between wireless calls or messages sent via the internet versus a dialed phone call or SMS.

Instead, as the court reads the prosecution history, the patentees distinguished Strisower on the basis that the patent did not envision a direct inquiry on a computer network about advertising and coupons for a designated area without disclosing one's current location by use of a wireless device.[5]  *See Ekchian v. Home Depot, Inc.*, 104 F.3d

---

[5] For its part, plaintiff would ignore the prosecution history altogether, on grounds that nothing in the file wrapper shows that patentees "unequivocally disavow[ed] a certain meaning [in order] to obtain [the] patent."  *Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2004).  Plaintiff is correct to the extent that there is no evidence of any *express* disavowal of claim language.  But an express disavowal is not the same thing as an "unequivocal" disavowal -- a patentee can, and often does, impliedly disavow a certain aspect of his claim simply by distinguishing prior art that contains that aspect.  *See, e.g., Bell Atl.,* 262 F.3d at 1273-74 (relying on prosecution history to limit claimed

1299, 1304 (Fed. Cir. 1997) ("by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover").  Thus, the court finds that the prosecution history does not require the court to give "a wireless call or message" a meaning other than its plain one.

- **Text-based marketing messages**

Under the '130 patent, a "text-based marketing message," is what a shopper should ultimately receive in reply, after having initiated contact with the server by sending out a "wireless call or message" from a mobile wireless communication device and having negotiated a series of menu options.  Plaintiff would give "text-based marketing message" its ordinary meaning, (Pl.'s Br. (dkt. #41) at 2), but if interpretation must be given, believes that the phrase should encompass internet-based communications, (Pl.'s Opp. Br. (dkt. #46) at 11).  Defendants argue that the phrase should mean "communications made using voice calling or short messaging capabilities."  (Def.'s Br. (dkt. #38) at 8.)

There is nothing in the claim language to prevent the court from giving "text-based marketing message" its plain meaning.  Similarly, the patent specification does not limit a "text-based marketing message" to an SMS message -- as mentioned in the court's discussion of "wireless call or message," the specification states that "text-based message"

---

"transceiver" to the three stated modes, because of clearly limiting statements made by the patentee to the examiner in order to distinguish a rejection based on prior art.)  Here, in distinguishing Himmel in light of Strisower, the patentees implicitly disclaimed patent coverage over users who affirmatively *request* advertising material without use of a wireless device that would reveal one's immediate location.  Whether or not this distinction precludes a finding of obviousness is not considered by this opinion, except to the extent the disclaimer apparently satisfied the patent examiner at the time.

is a category that includes SMS messages and other types of messages as well.  (130 pat., col. 2, lns. 30-32).

Unlike "a wireless call or message," there is not even the potential for an estoppel-based limitation in the prosecution history of "text-based message."   The patentees distinguished the Strisower prior art on grounds that Strisower displayed advertisements "*in response* to receiving a call" (emphasis added).   The patentees did not distinguish Strisower based on the medium through which the Strisower system displayed or sent *its own* advertising messages.   Thus, the '130 patent covers any "text-based marketing message" sent in reply to a user, whether over the internet, via SMS, or some other means.  The plain meaning governs.

## IV.  Motion for Sanctions

Independent of the parties' request for claims construction, defendants have moved for sanctions against plaintiff on grounds that plaintiff did not conduct an adequate pre-filing investigation, has not identified a good-faith basis for asserting patent infringement, and has persisted in this suit despite being apprised by defense counsel of reasons why the "Simon Malls" application does not infringe the '130 patent.  (*See* dkt. #30.)  "One of the basic purposes of Rule 11 of the Federal Rules of Civil Procedure is 'to deter baseless filings in the district court.'"  *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998).  A court may impose sanctions on a party for filing claims "that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Id.* at 458.

16

"It is well-settled, as a matter of patent law, that an infringing use of a patented method requires practicing every step claimed in the method." *Zoltek Corp. v. U.S.*, 442 F.3d 1345, 1359 (Fed. Cir. 2006). Infringement of the '130 patent requires, among other things, (1) a determination that a user's phone "is located at a given shopping facility" and (2) that this determination step is performed "at a server." (130 pat., col. 4, lns. 45-47; col. 6, lns. 25-27.) Defendants assert that "rudimentary testing" of their Simon Malls application and "good faith analysis" of explanatory communications sent by defense counsel revealed that the Simon Malls application practices neither of these two elements. (Def.'s Mtn. for Sanctions (dkt. #30) at 2-3.) By filing this lawsuit and persisting in it, they argue, plaintiff advanced a frivolous, legally unreasonable claim that is sanctionable under Rule 11. The court finds that defendants offer a cognizable argument for sanctions. *See View Eng'g Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981 (Fed. Cir. 2000) ("Before filing counterclaims of patent infringement, Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement.").

As for the first of the two disputed elements of infringement -- whether the Simon Malls application determines that a user's phone "is located at a given shopping facility" -- plaintiffs rely on an unusual reading of the word "at," broadening the scope of the word to mean "associated with." Under this interpretation, the Simon Malls application appears to infringe the '130 patent. As this court's claims construction analysis shows above, plaintiff's advocacy of this unusual interpretation is unconvincing, but the court is

17

not prepared to find it unsupported by at least colorable legal arguments. Thus, plaintiff was not frivolous in seeking to bring infringement claims before the court in order to test out its theories. *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004) (([I]t is not for [the court] to determine whether [the plaintiff]'s pre-filing interpretation of the asserted claims was correct, but only whether it was frivolous.").

As for the second disputed element of infringement -- whether the location of the user is determined "at a server" (claims 1-18) or a processor "of a server" (claim 19) -- the court must give a more thorough analysis, since that issue was not discussed in the claims construction portion of this order. Defendants assert that the Simon Malls application determines the shopping mall nearest to the user by comparing mall location coordinates stored within the program itself (on the user's phone) with the most recent GPS position recorded by the mobile phone. The task of finding the nearest mall thus is achieved on the phone rather than at a server.

Plaintiff argues that because it is logical to infer that the Simon Malls application relies on servers for some aspect of its functioning, such as populating the program menu with mall-specific advertisements, the application must rely on a server to determine the location of the user. This completely ignores defendants' own description, above, of a server-independent mall locating procedure undertaken by the phone, a description it has provided numerous times, both in letters to plaintiff (dkt. #30-5 at 2) and in briefing on the motion for sanctions (dkt. #30 at 10-11). Plaintiff also fails to address defendants' explanation that there is an easy way -- using a cell phone's "airplane" mode -- to demonstrate that the application does not require a Simon server to determine user

18

location.[6]

However surprising the court finds plaintiff's failure to address defendants' explanation, it would be inappropriate at this point to grant sanctions. While it appears that the Simon Malls application does not literally infringe upon the '130 patent, plaintiffs may yet be able to argue reasonably, or at least not frivolously, that each element of the patent is infringed via the doctrine of equivalents.[7] *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950) ("A patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.'" (quoting *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929))). Thus, the court cannot conclude, on the arguments before it, that plaintiff's infringement claim had no hope of success.

Turning to plaintiff's and defendants' litigation conduct more generally, the court notes that each party accuses the other of misrepresentation, both to the opposing side and to this court. Defendants accuse plaintiff of misrepresenting the patent's ownership and misrepresenting whether it had actually filed a lawsuit. (Dkt. #30 at 3.) They also

---

[6]   Assuming that defendants' claim is true, a server may be useful to occasionally update the geographical coordinates of the various Simon-owned shopping malls, as Simon acquires or sells properties. For a one-time determination of a given user's proximity to the various Simon malls, however, a Simon server is not needed. On a related note, plaintiff's attack on defendants' explanation of the application's ability to function in "airplane mode" is based on an incorrect, perhaps willfully obtuse reading of defendants' explanation. When GPS functionality is turned off, the phone may no longer be current but it may still determine the user's location based on the last-known GPS coordinates or on user input.

[7]   For example, although the Simon Malls application does not appear to use a server to determine a shopper's location, the application's use of a cellular phone to make this calculation with data provided by a server may qualify as "performing substantially the same function in substantially the same way to obtain the same result."

accuse plaintiff of deliberately mischaracterizing the functions of the Simon Malls application in its brief by asserting that defaulting to the nearest shopping facility constitutes determining that the device is "at a given shopping facility."  In turn, plaintiff argues that defendants have filed "numerous motions that are wholly lacking in merit" and have "made false statements in its Sanctions Motion and correspondence regarding the functionality of its Simon App."

Rather than delve into the intricacies of who mischaracterized what, the court is satisfied that, possible mischaracterizations notwithstanding, the issues are now squarely before the court.  No sanctions are necessary at this point, and the court hopes that the parties can proceed in a civil manner.  This ruling does not preclude appropriate sanctions being imposed at a later stage of this lawsuit.

## V.  Defendants' Motions to Dismiss and to Enter and Continue Their Motion to Transfer

In connection with earlier-filed motions to dismiss (dkt. #19) and transfer (dkt. #9), defendants filed a Renewed Motion to Dismiss (dkt. #43) and a Motion to Enter and Continue Their Motion to Transfer (dkt. #24).  Since the underlying motions to dismiss and transfer have been withdrawn, these remaining motions are denied as moot.

## ORDER

IT IS ORDERED that pursuant to the parties' requests for claims construction (dkt. ##37, 40) disputed claim terms of United States Patent No. 7,805,130 are

20

construed as follows:

- "determining that said mobile wireless communications device is located at a given shopping facility" retains its plain and ordinary meaning;

- "a wireless call or message" retains its plain and ordinary meaning; and

- "text-based marketing messages" retains its plain and ordinary meaning.

    IT IS FURTHER ORDERED that:

1. Defendants' Motion for Sanctions (dkt. #30) is DENIED.

2.  Defendants' Renewed Motion to Dismiss (dkt. #43) and Motion to Enter and Continue Their Motion to Transfer (dkt. #24) are DENIED.

    Entered this 27th day of March, 2012.

                    BY THE COURT:

                    /s/
                    _____
                    WILLIAM M. CONLEY
                    District Judge